# IN THE COURT OF APPEALS OF IOWA

No. 21-0891
Filed August 18, 2021

IN THE INTEREST OF L.C.,
Minor Child,

W.C., Father,
    Appellant.
_____

Appeal from the Iowa District Court for Union County, Monty Franklin, District Associate Judge.

A father appeals the termination of his parental rights to his seven-year-old daughter. **AFFIRMED.**

Adam M. Stone, Urbandale, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Meggen Weeks, Lenox, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

Noting his "sporadic and inconsistent" contact with his daughter, as well as his history of substance-abuse, domestic violence, and mental-health issues, the juvenile court terminated the parental rights of L.C.'s father, William.[1] He appeals, contending termination was not in the seven-year-old child's best interests. *See* Iowa Code § 232.116(2) (2020). Because the record shows L.C.'s safety and emotional needs are best served by ending her legal tie to William, we affirm.[2]

Methamphetamine use by her parents and domestic violence perpetrated by William led to the voluntary removal of L.C. from her home in June 2019.[3] The State charged the parents with child endangerment and drug possession. Authorities extradited William to Nebraska, where he had an outstanding warrant. As a result, he was incarcerated for several months at the start of the child-welfare case.

This was not L.C.'s first removal. Nebraska social services placed L.C. outside her parents' care for over two years. The issues in that case were the same: drug abuse and domestic violence. William faced a felony assault charge for severely beating Dixie. L.C. also reported seeing her parents strike each other. William did not participate in services to address the concerns arising in Nebraska.

---

[1] Originally, the State also petitioned for the termination of the rights of L.C.'s mother, Dixie. But because Dixie had shown significant progress toward reunification by the hearing date, the State dismissed the petition against her.

[2] We review de novo the record and the juvenile court's application of the best-interest factors in section 232.116(2). *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) ("Although the court has to use its best judgment in applying the factors contained in the statute, this does not mean we review its decision for an abuse of discretion.").

[3] L.C. has been in the same foster home since her removal from parental care.

Even when reunification occurred between L.C. and Dixie, Nebraska authorities still did not consider William to be a safe parent.

That situation never changed. William's incarceration and ongoing drug abuse prevented reunification with L.C. He did complete an inpatient substance-abuse treatment program in March 2020. Then, because of COVID-19 restrictions, his outpatient treatment was by virtual appointments. By the time his provider started offering in-person appointments that summer, William had left the state. He moved back to Nebraska and then to Idaho—missing all visitation with L.C.

The State petitioned for termination of his parental rights in December. When William returned to Iowa in January 2021, he obtained a new substance-abuse evaluation. He admitted injecting methamphetamine daily, as well as heroin and marijuana use. Although William re-engaged in treatment, he did not sign a release so that DHS could track his progress.

William's commitment to mental-health treatment was also underwhelming. William reports diagnoses of borderline personality disorder, anxiety, and posttraumatic stress disorder. But he engaged in minimal medication management and did not pursue the recommended therapy.

In February 2021, William filed a written consent to termination of his parental rights, asserting, "I am unable to safely care for L.C. at this time or in the reasonably foreseeable future." But before the April 2021 termination hearing, William withdrew his consent. After that hearing, the juvenile court terminated William's parental rights, citing Iowa Code section 232.116(1), paragraphs (d), (e), (f), (k), and (l).

The court provided this insightful summary of the reasons for termination:

> William's relationship with [L.C.] has remained extremely limited, his parenting abilities have not improved significantly in almost two years, and his visits with [L.C.] have not been productive as they have not improved the parent-child relationship between them. Allowing William to remain a part of [L.C.'s] life would be a significant and serious disruption to her life, and would interfere with the plan to reunify [L.C.] with her mother, Dixie. William's and Dixie's relationship is toxic and filled with violent episodes, and the success of the permanency goal of placement of [L.C.] with Dixie would be significantly impaired by maintaining William's parental rights and his involvement in that placement process.

William's petition on appeal does not challenge the statutory grounds. So we need not address that step in the termination process. *See P.L.*, 778 N.W.2d at 40 (describing the three-step process for termination of parental rights). The only question is whether termination is in L.C.'s best interests.

In making that best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 40. That statute allows us to consider whether a parent's ability to provide for the needs of the child is affected by his "mental condition." Iowa Code § 232.116(2)(a). And, for a child placed in foster care, we may consider "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family." Iowa Code § 232.116(2)(b). In considering integration into a foster family, we review both (1) "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child" and (2) "the reasonable preference of the child, if the court determines

that the child has sufficient capacity to express a reasonable preference." *Id.* § 232.116(2)(b)(1), (2).

William argues termination was not in L.C.'s best interests because they share a close bond. He asserts the juvenile court relied too heavily on testimony from the case worker in finding a "minimal" parent-child bond. He contends the worker was "unqualified to make reliable and informed bonding assessments." William also contends the court should have considered "the long-term financial consequences" that termination of his rights would have on L.C.

We disagree with William's view of the facts, as well as his application of the best-interests factors. First, the juvenile court appropriately deferred to the expertise of the social worker on the bonding issue. *See generally In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (crediting caseworker's opinion); *In re D.W.*, 791 N.W.2d 100, 707 (Iowa 2010). Second, the parent-child bond may play a role in the best-interests determination, but it is not the only consideration.

The primary consideration is L.C.'s safety, which cannot be ensured in William's care. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination). William has not engaged in the services necessary to address his parenting deficiencies caused by substance abuse and domestic violence. His unaddressed mental-health issues also affect his ability to provide for L.C.'s needs. *See* Iowa Code § 232.116(2)(a). What's more, the record shows L.C. is comfortable with her foster care family, and has also voiced a desire to reunite with Dixie. By contrast, L.C. told the social worker she enjoyed her visits with William but did not express a desire to return to

his custody. Finally, we decline to consider William's argument that termination is not in L.C.'s best interests based on the potential for financial support. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (noting "the loss of . . . financial support [is] an insufficient reason not to terminate if termination [is] otherwise in the child['s] best interests" in a chapter 232 termination case).

**AFFIRMED.**